UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER DON, on behalf of himself and all other similarly situated employees,<br><br>Plaintiff,<br><br>-against-<br><br>WOODBURY AUTOMOTIVE WAREHOUSE ENTERPRISES, LLC,<br><br>Defendant. | Civ. Action No.: 14-cv-04663 (JS)(AKT)<br><br><br>**JOINT MOTION FOR APPROVAL OF SETTLEMENT** |

Defendant Woodbury Automotive Warehouse Enterprises, LLC ("Woodbury"), Parts Authority, Inc. ("Parts Authority"), and Plaintiff Christopher Don ("Plaintiff"), (collectively the "Parties"), file this Joint Motion for Approval of Settlement and Dismissal with Prejudice of Claims.

## SETTLEMENT AND DISMISSAL OF CLAIMS

1.     In this action, originally entitled *Christopher Don, on behalf of himself and all other similarly situated employees v. Parts Authority, Inc. and Woodbury Automotive Warehouse Enterprises, LLC*, Plaintiff alleges, *inter alia*, that Woodbury and Parts Authority failed to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law.  Plaintiff was pursuing his claims against Woodbury in Court and while Parts Authority had been previously dismissed from this action without prejudice as a result of an arbitration agreement, Plaintiff intended to pursue these same claims in an arbitration if Plaintiff and Parts Authority did not reach a settlement.  This is because there is an arbitration agreement between Plaintiff and Parts Authority, but Plaintiff and Parts Authority respectfully request Court approval of the settlement between them.  Similarly, Plaintiff and Woodbury respectfully request Court approval of the settlement between them.

2.      The Parties continue to dispute the amount of overtime wages due to Plaintiff (if any), and Woodbury and Parts Authority deny each and every claim made by the Plaintiff in the action.  However, the Parties desire to fully and finally resolve any and all disputes regarding any and all of Plaintiff's claims in the action without the expense of further litigation.

3.      In furtherance of the Parties' mutual desire to resolve their dispute without further litigation between them, they have entered into two (2) Settlement Agreements and General Releases (the "Agreements") which are submitted herewith.  One Settlement Agreement and General Release has been entered into between Plaintiff and Woodbury, and the other between Plaintiff and Parts Authority.  The primary purpose of this Motion is to request the Court's approval of the Agreements in accordance with the requirements of the FLSA.

4.      The FLSA places certain limits on a current or former employee's ability to waive claims for unpaid wages or overtime under 29 U.S.C. § 216.  *See Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728 (1981); *Brooklyn Savings Bank v. O'Neill*, 324 U.S. 697, 706-07 (1945).  With only two exceptions, employees cannot waive FLSA claims for unpaid wages or overtime.  The two exceptions are for: (1) settlements supervised by the Secretary of Labor, and (2) judicially-approved stipulated settlements.  *Manning v. New York University*, No. 98 CIV 3300 (NRB), 2001 WL 963982, *11 (S.D.N.Y. Aug. 22, 2001), *aff'd*, 299 F.3d 156 (2d Cir. 2002), *cert. denied*, 538 U.S. 1035 (2003).

5.      The exception for judicially-supervised stipulated settlements originated with *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946), where the Supreme Court stated as follows:

> Even though stipulated judgments may be obtained, where settlements are proposed in controversies between employers and employees over violations of the Act, by the simple device of filing suits and entering agreed judgments, we think the requirement of pleading the issues and submitting the judgment to judicial scrutiny may differentiate stipulated judgments from compromises by the parties.  *Id.* at 113 n.8.

- 2 -

6.      In the wake of *D.A. Schulte*, it has become well-settled that an employee may waive an FLSA claim for unpaid wages or overtime pursuant to a judicially-supervised stipulated settlement.  *See, e.g.*, *Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Dept. of Labor, Employment Standards Admin., Wage and Hour Div*., 679 F.2d 1350, 1352-53 (11th Cir. 1982) (when employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness); *see also Urbino v. Puerto Rico Ry. Light & Power Co*., 164 F.2d 12, 14 (1st Cir. 1947); *Jarrad v. Southeastern Shipbuilding Corp.*, 163 F.2d 960, 961 (5th Cir. 1947); *Bracey v. Luray*, 161 F.2d 128 (4th Cir. 1947) (citing *D.A. Schulte* in holding that judicially-supervised settlement agreement of FLSA claims between employees and employer was enforceable); *DeBraska v. City of Milwaukee*, 11 F. Supp.2d 1020, 1026-27 (E.D. Wis. 1998) (court-approved settlement of FLSA claim constitutes final judgment with *res judicata* effect); *Manning,* 2001 WL 963982, *11-13.

7.      The Parties represent to the Court that the Agreements: (a) are fair to all Parties; (b) reasonably resolves bona fide disagreements between the Parties with regard to the merits of the Plaintiff's claims; and (c) demonstrate a good faith intention by the Parties that the Plaintiff's claims for liability and damages be fully and finally resolved, and not relitigated in whole or in part at any point in the future.

8.      The Settlements in this case are fair and reasonable under the factors set forth in *Wolinsky v. Scholastic, Inc.*, 2012 WL 2700381, *2 (S.D.N.Y. July 5, 2012)(Furman, J.).

9a.      Don v. Woodbury - The first *Wolinsky* factor examines "the Plaintiff's range of possible recovery."  In this case, Plaintiff Christopher Don was a manager who was last paid by Woodbury in an amount that was equal to an hourly rate of $21.87.  Plaintiff worked for Woodbury for about 10 years, 5 of which are within the NYLL statute of limitations and 2 of which are within the FLSA statute of limitations (presuming a willful violation which is disputed

by Woodbury).  If applicable, Plaintiff's overtime rate at Woodbury would have been $32.80 per hour.  Pursuant to the settlement between Plaintiff and Woodbury, Plaintiff will receive $46,000.00 from Woodbury which represents approximately all of his estimated overtime hours. Plaintiff estimated that during the time period of 2008-2013 (at which time Woodbury was sold to Parts Authority), Plaintiff worked 3 hours of overtime during 26 weeks each year and 8 hours of overtime during the other 26 weeks each year.  That adds up to 286 hours of overtime each year for 5 years or 1,430 overtime hours.  Multiplying the 1,430 overtime hours by $32.80 (Plaintiff's overtime rate) equals $46,904.  As such, this settlement offers Plaintiff almost 100% of the overtime pay he is claiming not including liquidated damages.  At the same time, Woodbury asserts that Plaintiff is owed no overtime pay.  As such, the $46,000 settlement is a fair and reasonable resolution of disputed claims.

9b.  <u>Don v. Parts Authority</u> - Similarly, Plaintiff was paid by Parts Authority at an hourly rate of $21.87 or at a weekly salary of $875 (which equals an hourly rate of approximately $21.87).  The parties dispute whether Plaintiff was paid by salary or per hour. Plaintiff worked for Parts Authority for only about 1 year and Plaintiff's overtime rate at Parts Authority was also $32.80 per hour.  And while Plaintiff claimed that at times he worked as much as 57 hours per week, he claimed he worked 43 or 48 hours per week like at Woodbury for the majority of the year.  Pursuant to the settlement between the Plaintiff and Parts Authority, Plaintiff will receive $8,000.00 from Parts Authority.  By comparison, Plaintiff is receiving a settlement amount of $9,200 per year ($46,000/5) from Woodbury.  As such, the settlement from Parts Authority is almost equal to the annual value of the settlement with Woodbury.  As such, the $8,000 settlement is also a fair and reasonable resolution of disputed claims.

10.   The second *Wolinsky* factor examines "the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses.'"  Settling Plaintiff's claim at this point will avoid continuing litigation

- 4 -

costs for all Parties.  Counsel for Woodbury and Plaintiff began discussing a detailed Proposed Case Management Plan which would have involved Discovery Requests pursuant to Rules 33, 34, and 36, as well as depositions of the Plaintiff and several of Woodbury's agents.  In addition, counsel for Plaintiff and Woodbury had begun exchanging Electronically Stored Information ("ESI") protocols which would have involved extensive boolean search terms, custodians, and time frames.  Settlement at this point will obviate such time-consuming and expensive litigation. Similarly, Plaintiff and Parts Authority were preparing to begin the more costly process of arbitration at the time they reached settlement.  Nowadays, arbitration involves almost all the same discovery and motion practice of court, except the parties also have to pay filing fees and arbitrator fees not present in court.  In this case, counsel for Plaintiff and Parts Authority had already begun discussing arbitration motions such as whether class-wide claims could be pursued under the Parts Authority arbitration provision.  Settlement at this point will obviate such time-consuming and expensive arbitration.

11.     The third *Wolinsky* factor examines "the seriousness of the litigation risks faced by the parties."  All parties face the risk of losing.  Plaintiff, an alleged hourly worker, could lose settlements of $46,000.00 and $8,000.00 each, which are significant amounts of money to him and give him virtually full recovery.  At the same time, Woodbury faces the risks and expenses imposed by a putative class action in court and Parts Authority faces the risks and expenses of a putative class action in arbitration.

12. The fourth *Wolinsky* factor examines "whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel.'"  The settlement negotiations took place over 2 months.  During numerous separate telephone conferences between Plaintiff's counsel and counsel for each Defendant, counsel argued the facts, the law, and what an appropriate settlement was.  Plaintiff's counsel has had much success litigating numerous wage

and hour class actions. For example, in <u>Siewharack v. Queens Long Island Medical Group, P.C.</u>, (11 cv 03603 (WFK)(ARL)) Plaintiff's counsel served as co-lead counsel for a class of approximately 2,500 current and former employees who brought claims under the Federal Fair Labor Standards Act and NYLL for unpaid straight and overtime wages. In that case, the Honorable William F. Kuntz of this Court certified the class for settlement purposes, appointed the Law Firm of Louis Ginsberg, P.C. as co-lead counsel, and approved a $2.45 million settlement. Likewise, the Law Firm of Louis Ginsberg, P.C. served as co-lead counsel in successfully litigating another wage and hour class action on behalf of a group of about 165 employees in <u>Ludwig v. Pret A Manger</u>, (11 cv 5677 (BSJ)(AJP)). In that case, the Honorable Barbara S. Jones of the United States District Court for the Southern District of New York, also certified a class for settlement purposes, appointed the Law Firm of Louis Ginsberg, P.C. as Co-Lead Counsel, and approved a settlement of $299,000.

Likewise, just recently, in November, 2014, in a wage and hour class action, asserting unpaid straight and overtime claims, Plaintiff's counsel obtained Preliminary Approval of a $350,000.00 class action settlement in *Kaye v. Orange Regional Medical Center* (Index No.: 652970/2012, Orange County Sup. Ct., J. Colangelo) on behalf of a class of 70 respiratory therapists. In that case, Judge Colangelo of the Orange County Supreme Court named the Law Firm of Louis Ginsberg, P.C. as Class Counsel and certified a class for settlement purposes. Also, on August 1, 2014, in <u>Ramirez v. Riverbay</u>, 2014 WL 3800886 (S.D.N.Y. 2014), Judge John G. Koeltl of the United States District Court for the Southern District of New York granted Federal Rule of Civil Procedure 23 Class Certification to three (3) subclasses of about 1,700 employees, and appointed the Law Firm of Louis Ginsberg, P.C. as Co-Lead Counsel for the Class.

Likewise, defense counsel in this case are very experienced wage and hour lawyers as well.  Sharon Stiller, counsel for Parts Authority, is the director of the Employment Law Practice at Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP, and has litigated numerous wage and hour cases.  She is a fellow of the College of Labor and Employment Lawyers, and the author of two treatises on employment law, Employment Law in New York (West Group 2001)(Volume 13A of the New York State Practice Series) and the national treatise, Expert Witnesses: Employment Cases (Thomson West 2008-2009).  Ms. Stiller has been appointed to the American Arbitration Association Panel of Neutrals for Employment Law, and has been recognized for her legal work and community service.  She has been named one of the top 25 Women Lawyers in Western New York, and has been included in *The Best Lawyers in America*® for employment law.  Martin Lee, counsel for Woodbury, has been a litigator since 1959 and has many years experience in the field of employment law.

13.	The fifth *Wolinsky* factor examines "possibility of fraud or collusion."  There is no evidence of any fraud or collusion in this case.  The settlement was only finally achieved after 2 months of negotiations.

14.	Lastly, there is no evidence of any factors weighing against approval of this settlement.  There is no history of FLSA non-compliance by these same employers such as other lawsuits, and no other former employees have come forward asserting similar claims.

15.	The parties respectfully request that the Court approve these settlements as fair and reasonable and enter the proposed Orders attached hereto.

## CONCLUSION

WHEREFORE, the parties to this action respectfully request an Order:

1.     Approving the Agreement between Plaintiff and Woodbury; and

2.     Dismissing with prejudice the claims of Plaintiff against Woodbury.


Dated: New York, New York
December 30, 2014


LAW FIRM OF LOUIS GINSBERG, P.C.                    WARSHAW BURSTEIN, LLP

By: _____                      By: _____
     Louis Ginsberg, Esq.                                Martin R. Lee, Esq.
     1613 Northern Blvd.                                 555 Fifth Avenue
     Roslyn, New York 11576                              New York, NY 10017
     P: 516.625.0105 X.18                                P: 212.984.7700
     lg@louisginsberglawoffices.com                      mlee@wbcsk.com
     Attorneys for Plaintiff                             Attorneys for Woodbury

WHEREFORE, the parties to this action respectfully request an Order:

1.      Approving the Agreement between Plaintiff and Parts Authority; and

2.      Dismissing with prejudice the claims of Plaintiff against Parts Authority.


Dated: New York, New York
December 30, 2014


LAW FIRM OF LOUIS GINSBERG, P.C.                ABRAMS, FENSTERMAN,
                                                FENSTERMAN, EISMAN,
                                                FORMATO, FERRARA & WOLF,
                                                LLC

By: _____              By: _____
     Louis Ginsberg, Esq.                        Sharon Stiller, Esq.
     1613 Northern Blvd.                          160 Linden Oaks, Suite E
     Roslyn, New York 11576                       Rochester, NY 14625
     P: 516.625.0105 X.18                         P: (585) 218-9999
     lg@louisginsberglawoffices.com               sstiller@abramslaw.com
     Attorneys for Plaintiff                      Attorneys for Parts Authority

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER PLAINTIFF, on behalf of himself and all other similarly situated employees,<br><br>Plaintiff,<br><br>-against-<br><br>WOODBURY AUTOMOTIVE WAREHOUSE ENTERPRISES, LLC,<br><br>Woodbury. | Civ. Action No.: 14-cv-04663 (JS)(AKT)<br><br>**PROPOSED ORDER** |

AND NOW, THIS __ DAY OF _____, 201_, the Court having reviewed the Complaint in this case of Plaintiff Christopher Don v. Woodbury Automotive Warehouse Enterprises, LLC (collectively, along with Parts Authority, Inc., the "Parties"), and considered applicable case law, and for good cause shown, it is **ORDERED**, **ADJUDGED** and **DECREED** that:

1.       The Settlement Agreement & General Release between Plaintiff and Woodbury: (a) is fair to all Parties; (b) reasonably resolves a bona fide disagreement between the Parties with regard to the merits of the Plaintiff's claims; and (c) demonstrates a good faith intention by the Parties that the Plaintiff's claims for liability and damages be fully and finally resolved, and not relitigated in whole or in part at any point in the future.   The Agreement is therefore **APPROVED** by the Court.

2.       This lawsuit and the claims of Plaintiff against Woodbury are **DISMISSED WITH PREJUDICE** in their entirety.

_____
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER PLAINTIFF, on behalf of himself and all other similarly situated employees, | Civ. Action No.: 14-cv-04663 (JS)(AKT) |
| Plaintiff, | |
| -against- | **PROPOSED ORDER** |
| WOODBURY AUTOMOTIVE WAREHOUSE ENTERPRISES, LLC, | |
| Woodbury. | |

AND NOW, THIS __ DAY OF _____, 201_, the Court having reviewed the Complaint in this case of Plaintiff Christopher Plaintiff. v. Woodbury Automotive Warehouse Enterprises, LLC (collectively, along with Parts Authority, Inc., the "Parties"), and considered applicable case law, and for good cause shown, it is **ORDERED**, **ADJUDGED** and **DECREED** that:

1.      The Settlement Agreement & General Release between Plaintiff and Parts Authority:  (a) is fair to all Parties; (b) reasonably resolves a bona fide disagreement between the Parties with regard to the merits of the Plaintiff's claims; and (c) demonstrates a good faith intention by the Parties that the Plaintiff's claims for liability and damages be fully and finally resolved, and not relitigated in whole or in part at any point in the future.  The Agreement is therefore **APPROVED** by the Court.

2.      The lawsuit and the claims of Plaintiff against Parts Authority are **DISMISSED WITH PREJUDICE** in their entirety.

_____
UNITED STATES DISTRICT JUDGE

- 11 -

EXHIBIT A

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (this "Agreement") is hereby entered into by and between Christopher Don ("Don" or "Plaintiff"), on the one hand, and Woodbury Automotive Warehouse Enterprises, LLC ("Defendant"), on the other hand (Defendant, collectively with Plaintiff, are hereinafter referred to as the "Parties"; each of the Parties, individually, is hereinafter referred to as a "Party").

## RECITALS

**WHEREAS**, on or about August 6, 2014, Plaintiff, on behalf of himself and all others similarly situated, commenced a civil action against Defendant in the United States District Court for the Eastern District of New York, which is currently captioned, *Christopher Don, on behalf of himself and all other similarly situated employees v. Woodbury Automotive Enterprises, LLC*, and bearing Case Number 14-cv-04663 (JS)(AKT), therein alleging, *inter alia*, that Defendant violated the federal Fair Labor Standards ("FLSA") and the New York Labor Law ("NYLL") by failing to properly pay wages to Plaintiff (the "Lawsuit");

**WHEREAS**, Defendant denies that they have committed a violation, either in whole or in part of any law, rule, or regulation, or breached any obligation or duty that they may owe to Plaintiff, or are liable to Plaintiff in any way, and the Parties agree that there exists a bona fide dispute as to the merit of and basis for the claims asserted by Plaintiff in the Lawsuit;

**WHEREAS**, Plaintiff now individually desires to resolve, settle, and agrees to dismiss with prejudice all claims that were or could have been asserted in the Lawsuit, without further litigation or adjudication.  This action is taken solely on Plaintiff's own behalf, and not on behalf of any other person similarly situated;

1

**WHEREAS**, in consideration of the mutual undertakings set forth below, this Agreement will resolve, finally and completely, any and all possible claims and disputes by and between Plaintiff and Defendant arising from Plaintiff's employment with Defendant, and separation therefrom, up to the date that Plaintiff signs this Agreement, including but not limited to the claims that were or could have been asserted in the Lawsuit;

**NOW THEREFORE**, in consideration of the promises and covenants set forth below, the Parties, each intending to be legally bound, hereby agree as follows:

1.      <u>Dismissal of the Lawsuit</u>.  The Parties agree that they shall cause the Lawsuit and the claims asserted therein to be dismissed, discontinued, and/or withdrawn, as applicable, with prejudice, in accordance with the terms and conditions of this Agreement, by, *inter alia*, filing with the United States District Court for the Eastern District of New York a Joint Motion for Approval of this Settlement, requesting an Order that the Settlement be approved and the Lawsuit be dismissed with prejudice.

2.      <u>Consideration</u>.  In consideration for the promises and covenants made herein, Defendant agrees to pay Plaintiff, and Plaintiff agrees to accept a total Settlement Sum in the amount of Forty Six Thousand Dollars ($46,000.00)(the "Settlement Sum").  The Settlement Sum and any other consideration described herein represent and are in full satisfaction and consideration of the complete settlement, release, and waiver of all claims, whether known or unknown, asserted or unasserted, attorneys' fees, costs, and any other claim or relief which Plaintiff did assert or could have asserted in the Lawsuit against Woodbury Automotive Warehouse Enterprises, LLC, as more fully described in Section 5 of this Agreement.

Subject to the terms and conditions of the Consideration Period set forth below, this Agreement shall be administered, and the Settlement Sum distributed, as follows:

2

i.      Plaintiff shall execute this Agreement, and Plaintiff's counsel shall e-mail a copy and send one original of the executed Agreement to Defendant's counsel.  Defendant shall also execute this Agreement.  Within five (5) days of receiving a fully executed copy of this Agreement via e-mail, Defendant's counsel shall send the three (3) settlement checks described below to Plaintiff's counsel, via overnight mail, along with a copy of the fully-executed Agreement, to the following address: The Law Firm of Louis Ginsberg, P.C., Attn: Louis Ginsberg, Esq., 1613 Northern Blvd. Roslyn, NY 11576.

ii.      The first check shall be made payable to "Christopher Don" in the amount of Fifteen Thousand One Hundred Twenty Seven Dollars ($15,127.00), less all applicable taxes and other withholdings and shall represent payment for wages.  This payment will be reported to taxing authorities as wage income on an IRS Form W-2.

iii.      The second check shall be made payable to "Christopher Don" in the gross amount of Fifteen Thousand One Hundred Twenty Seven Dollars ($15,127.00) and shall represent payment for prejudgment interest.  This non wage income will be reported to Don on an IRS Form 1099.

iv.      The third check shall be made payable to "The Law Firm of Louis Ginsberg, P.C." (Tax id 13-3877515), in the gross amount of Fifteen Thousand Seven Hundred Forty Six Dollars ($15,746.00) for attorneys' fees and costs.  An IRS Form 1099 will be issued to Plaintiff's counsel and this amount will also be included on Don's IRS Form W-2.

v.      Plaintiff's Counsel shall hold all settlement checks in escrow until the Court grants the Joint Motion for Approval of this Settlement and orders that this Lawsuit is dismissed with prejudice.

3.      <u>Taxes</u>.  Plaintiff agrees that he shall protect, indemnify, defend, and hold harmless Defendant from and against any and all liability or claims for any taxes, assessments, interest, and/or penalties with respect to any payment or payments made to him pursuant to this Agreement, other than the employer portion of payroll taxes.  Plaintiff covenants that he has not relied upon Defendant, or any representative or agent thereof, for advice regarding any tax liabilities or consequences.

4.      <u>Acknowledgement of Complete and Adequate Consideration</u>.  Plaintiff acknowledges that he has received sufficient consideration as set forth in this Agreement.  He acknowledges that the release provisions herein shall be given full force and effect in accordance with each and all of the terms and provisions relating to unknown or unsuspected rights, claims, demands, and causes of action, if any, to the same effect as those terms and provisions relating to any other claims, demands or causes of action herein specified.

5.      <u>General Release of All Claims</u>.  In consideration for the promises and covenants set forth herein, Plaintiff hereby irrevocably and unconditionally releases and forever discharges, for himself and for his heirs, estate, spouse and child or children (if any), attorneys, representatives, executors, administrators, successors, assigns, and agents, Defendant, and each of their respective past or present affiliates, parents, subsidiaries, related companies, employees, predecessors, and successors, and each of their respective past and present owners, directors, officers, benefit plans, management committees, members, agents, employees, trustees, representatives, attorneys, shareholders, partners, benefit plan fiduciaries and administrators, and assigns, and all persons acting by, through, under, or in concert with any of them (collectively, the "Defendant Releasees"), from any and all actions, complaints, rights, claims, charges, causes of action, liabilities, costs, and damages, known or unknown, asserted or unasserted, suspected or

4

not, fixed or contingent, and in law or in equity, which Plaintiff not has, or may ever have had, concerning, relating to, predicated upon, or arising out of, directly or indirectly, his employment with Defendant and/or separation therefrom.  This Agreement shall not affect Plaintiff's rights and claims against Parts Authority.

This Release expressly includes any and all actions, complaints, rights, claims, charges, causes of action, liabilities, costs, and damages based upon any conduct occurring up to and including, or that have accrued as of, the date that Plaintiff signs this Agreement (and any obligations or causes of action arising from or predicated upon such claims), including but not limited to any and all claims:

- Arising under common law, including wrongful or retaliatory discharge, breach of contract, or based upon a violation of public policy;

- Sounding in tort, including libel, slander, defamation, or intentional infliction of emotional distress;

- Arising under the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act, the Civil Rights Acts of 1866 and 1867, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Employee Retirement Income Security Act, the FLSA, the Americans with Disabilities Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Occupational Safety and Health Act, the Genetic Information Nondiscrimination Act, the Lilly Ledbetter Fair Pay Act of 2009, the Fair Credit Reporting Act, the Family and Medical Leave Act, the Equal Pay Act of 1963, as amended, the Consolidated Omnibus Budget Reconciliation Act, the Rehabilitation Act, the New York State Executive Law, the New York State Human Rights Law, the New York City Administrative Code, The New York City Human Rights Law, the NYLL, the New York Retaliatory Action by Employers Law, the New York State Worker Adjustment and Retraining Notification Act, the New York Nondiscrimination for Legal Actions Law, the New York Wage Theft Prevention Act, the New York City Earned Sick Act, or the New York Civil Rights Law;

- Of discrimination, harassment, retaliation, improper wage payment, or any other unlawful employment practice under federal, state, municipal, local, or foreign law;

- Arising under any federal, state, municipal, local, or foreign law, rule, or reputation that in any way prohibits discrimination, harassment, retaliation, improper wage

payments, or any other unlawful employment practice, or that is in any way related to employment and/or the separation therefrom; and

- Arising under any other federal, state, municipal, local, or foreign law, rule, or regulation, including but not limited to civil rights laws, wage-hour, wage-payment, pension, or labor laws, rules, and regulations, constitutions, ordinances, public policy, contract or tort laws, or any other action.

Plaintiff expressly acknowledges that this Release is also intended to include in its effect, without limitation, any and all claims which Plaintiff does not know of or suspect may exist in his favor at the time of execution of this Agreement, and that this Release will also extinguish any such claim.  The provisions of any laws providing in substance that releases shall not extend to claims which are unknown or unsuspected, at the time of execution, to the person executing such waiver or release, are hereby expressly waived by Plaintiff.

Plaintiff also acknowledges and affirms that, following payment of the Settlement Sum in accordance with Section 2 of this Agreement, he has been fully paid all wages and other compensation owed to him by Defendant, including all overtime wages, incentive compensation, commissions, and spread of hours pay, and also acknowledges and affirms that, as of the date of his execution of this Agreement, he has been afforded all required periods of family, medical, and other leave, as well as any right to reinstatement upon conclusion of any leave taken.

Plaintiff promises and represents that he will withdraw, with prejudice, any and all outstanding administrative complaints or charges, filed with federal, state and local agencies/administrative bodies and will also withdraw with prejudice all judicial actions, as well as any and all other lawsuits, claims, demands or actions pending against Defendant Releasees both individually and in their/its official capacities.  Plaintiff will not file any administrative or judicial complaints, charges, lawsuits, claims, demands or actions of any kind against Defendant Releasees.  In the event any such complaints, charges, lawsuits, claims, demands or actions are

6

not withdrawn or are filed due to circumstances beyond the control of Plaintiff, he promises and represents that he will not voluntarily testify, give evidence or otherwise participate or cooperate in any investigation or other proceedings connected with or resulting from such complaints, charges, lawsuits, claims, demands or actions and that he will execute such papers or documents as the requesting party determines may be necessary, to have said complaint, charge, lawsuit, claim, demand or action dismissed with prejudice. Plaintiff further agrees to waive the right to recover any monetary damages in any charge or lawsuit filed by him, or by anyone else on his behalf against Defendant Releasees, other than pursuant to this Agreement.

Notwithstanding the foregoing, by entering into this Agreement, Plaintiff is not releasing claims that relate to any claims for enforcement of this Agreement or claims that arise after the date that Plaintiff signs this Agreement.

6.     <u>No Admission of Liability</u>.  This Agreement does not constitute an admission by Defendant of any wrongful action or violation of any federal, state statute, or city statute, or common law rights, including those relating to the provisions of any law or statute concerning employment actions, or any other possible or claimed violation of law or rights.

7.     <u>Consultation with Attorney and Knowing and Voluntary Release</u>.  Plaintiff acknowledges that he was advised by Defendant to consult an attorney of his choosing and, in fact, he has consulted with his attorneys, Louis Ginsberg, Esq. and Matthew Cohen, Esq., before executing this Agreement. Plaintiff further acknowledges that he has been afforded a reasonable period of time, and a full and fair opportunity, to consider this Agreement, to consult with an attorney, and to have an attorney explain all of its contents and ramifications. Plaintiff warrants that he has carefully read this Agreement, that he understands completely its contents, that he understands the significance and consequences of signing it, and that he has agreed to and signed

this Agreement knowingly and voluntarily of his own free will, act, and deed, and for full and sufficient consideration.

8.      <u>Confidentiality</u>.  The parties and their counsel represent that they will keep the terms of this Agreement confidential and will not disclose same to any other person or entity, except as provided herein.  The parties and their counsel understand that this Agreement will be presented to the Court for approval and will be public because it will be filed publicly.  Also, the parties may disclose the terms of this Agreement to members of their immediate family, attorney(s) and financial advisor(s) for tax purposes or financial planning.  Said family member(s), attorney(s) and financial adviser(s) together ("Advisers") shall also be obligated to keep the terms of this Agreement confidential.  In addition, the parties may disclose the existence and terms of this Agreement if necessary in an action to enforce this Agreement, or as otherwise required by law.  If a court of competent jurisdiction determines that either Don and/or any Advisor have materially breached this paragraph 8, Don shall pay Defendant $15,000.00 as liquidated damages and not as a penalty.

9.      <u>Non-Disparagement</u>.  Plaintiff agrees that he shall not disparage Defendant, their officers, shareholders, directors, or employees.  Similarly, Defendant, its officers, directors, and shareholders, agree that they shall not disparage Plaintiff.

10.      <u>References</u>.  As it relates to Plaintiff's procurement from Defendant of a professional reference, Defendant agrees to provide a neutral reference, under which it will only provide a prospective employer of Plaintiff with the following information: Plaintiff's dates of employment, salary, and/or rate of pay at the time of separation from employment, and Plaintiff's job title(s).

11.     End of Employment/No Reemployment.  Plaintiff acknowledges that his employment with Defendant has ended.  Plaintiff further voluntarily and unequivocally acknowledges and agrees that by entering into this Agreement, he voluntarily and knowingly waives any and all rights to re-employment with Defendant, and will not seek employment with Defendant at any time.

12.     Severability.   Should any provision of this Agreement be declared illegal or unenforceable by any court, administrative agency, or other entity, the Parties agree that said court, administrative agency, or other entity shall possess full discretion to interpret or modify all such provisions to the minimum extent necessary to be declared enforceable.  If such interpretation or modification is not possible, such provision shall immediately become null and void, leaving the remainder of the Agreement in full force and effect.  Notwithstanding the foregoing, in the event that all material terms and conditions of this Agreement are rendered null and void because such interpretation or modification is not possible, the parties shall be returned to the status quo ante.

13.     Entire Agreement:  The parties affirm that no promise, inducement or agreement not expressed in this Agreement has been made and that this Agreement contains the entire agreement of the Parties.

14.     Modification.  This Agreement may only be modified, altered or changed in writing, signed by the Parties.

15.     Construction.  This Agreement shall not be interpreted in favor of or against either Party on account of such Party having drafted this Agreement.

16.     Consideration Period.  Plaintiff understands that he has a period of fourteen (14) calendar days from the date he receives this Agreement to consider its terms and conditions

before signing it (the "Consideration Period"), although he is free to sign it before the end of the Consideration Period.  Plaintiff further understands that he may use as much of the Consideration Period as he wishes before signing this Agreement, and that any material or immaterial changes to the Agreement will not restart the running of the Consideration Period.

17.     <u>Capacity to Execute</u>.  Plaintiff and Defendant's agents each represent and warrant that they have the full legal right, capacity, and authority to execute this Agreement and to make the promises, representations and warranties contained herein.  Plaintiff further represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations, or causes of action referred to in this Agreement.

18.     <u>Bona Fide Dispute</u>.  The Parties agree that there exists a bona fide dispute as to the merit of and basis for the claims asserted by Plaintiff in this Lawsuit.

19.     <u>Governing Law and Jurisdiction</u>.  This Agreement shall be subject to and governed by the laws of the State of New York without giving effect to principles of conflicts of law.

20.     <u>Breach</u>.  If a Court of competent jurisdiction determines that any party breached any of the terms of this Agreement, the breaching party shall pay to the non-breaching party all of its reasonable costs and expenses, including reasonable attorney's fees, incurred in enforcing the terms of this Agreement and/or defending any action(s).  A party may also seek to recover damages arising from any breach of this Agreement by the other party.

21.     <u>Notices</u>.        All other notices and documents set forth herein shall be delivered to counsel for Defendant at the following address: Martin R. Lee, Esq., Warshaw Burstein, LLP, 555 Fifth Avenue, New York, NY 10017; facsimile 212-972-9150.

22.     <u>Section Headings</u>.  The section and paragraph headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

23.     <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument.  Digital signatures shall be deemed as valid as original signatures.

**IN WITNESS WHEREOF**, the undersigned have executed this Settlement Agreement as of the date specified below.

DATED: _12/12/14_                            DATED: _____

_____                      _____
CHRISTOPHER DON                              WOODBURY AUTOMOTIVE
                                             WAREHOUSE ENTERPRISES,
                                             LLC

11

22.    <u>Section Headings</u>.  The section and paragraph headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

23.    <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument.  Digital signatures shall be deemed as valid as original signatures.


**IN WITNESS WHEREOF**, the undersigned have executed this Settlement Agreement as of the date specified below.


DATED: _____

DATED: _12-17-2014_



_____

CHRISTOPHER DON

MICHAEL JACABACCI
WOODBURY AUTOMOTIVE
WAREHOUSE ENTERPRISES,
LLC

11

EXHIBIT B

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (this "Agreement") is hereby entered into by and between Christopher Don ("Don"), on the one hand, and Parts Authority, Inc. ("Parts Authority"), on the other hand (Parts Authority, collectively with Don, are hereinafter referred to as the "Parties"; each of the Parties, individually, is hereinafter referred to as a "Party").

## RECITALS

**WHEREAS**, Don alleges that Parts Authority violated the federal Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by failing to properly pay wages to Don;

**WHEREAS**, Parts Authority denies that they have committed a violation, either in whole or in part of any law, rule, or regulation, or breached any obligation or duty that they may owe to Don, or are liable to Don in any way, and the Parties agree that there exists a bona fide dispute as to the merit of and basis for the claims asserted by Don;

**WHEREAS**, Don now individually desires to resolve, settle, and agrees to dismiss with prejudice all claims that could have been asserted against Parts Authority, without further litigation, arbitration, or adjudication.  This action is taken solely on Don's own behalf, and not on behalf of any other person similarly situated;

**WHEREAS**, in consideration of the mutual undertakings set forth below, this Agreement will resolve, finally and completely, any and all possible claims and disputes by and between Don and Parts Authority arising from Don's employment with Parts Authority, and separation therefrom, up to the date that Don signs this Agreement;

**NOW THEREFORE**, in consideration of the promises and covenants set forth below, the Parties, each intending to be legally bound, hereby agree as follows:

1.      <u>Joint Motion</u>.  The Parties agree that they will file with the United States District Court for the Eastern District of New York a Joint Motion for Approval of this Settlement, requesting an Order that the Settlement be approved.  This Agreement is contingent upon obtaining Court approval of the Settlement provided for herein.

2.      <u>Consideration</u>.  In consideration for the promises and covenants made herein, Parts Authority agrees to pay Don, and Don agrees to accept a total Settlement Sum in the amount of Eight Thousand Dollars ($8,000.00)(the "Settlement Sum").  The Settlement Sum and any other consideration described herein represent and are in full satisfaction and consideration of the complete settlement, release, and waiver of all claims, whether known or unknown, asserted or unasserted, attorneys' fees, costs, and any other claim or relief which Don did assert or could have asserted against Parts Authority, as more fully described in Section 5 of this Agreement.

Subject to the terms and conditions of the Consideration Period set forth below, this Agreement shall be administered, and the Settlement Sum distributed, as follows:

i.      Don shall execute this Agreement, and Don's counsel shall e-mail a copy and send one original of the executed Agreement to Parts Authority's counsel.  Parts Authority shall also execute this Agreement.  Within five (5) days of receiving a copy of this Agreement signed by Don via e-mail, Parts Authority's counsel shall send the three (3) settlement checks described below to Don's counsel, via overnight mail, along with a copy of the fully-executed Agreement, to the following address: The Law Firm of Louis Ginsberg, P.C., Attn: Louis Ginsberg, Esq., 1613 Northern Blvd. Roslyn, NY 11576.

ii.      The first check shall be made payable to "Christopher Don" in the amount of Two

Thousand Six Hundred Sixty Six Dollars and Sixty Seven Cents ($2,666.67), less all applicable

taxes and other withholdings and shall represent payment for wages.  This payment will be

reported to taxing authorities as wage income on an IRS Form W-2.

iii.     The second check shall be made payable to "Christopher Don" in the gross

amount of Two Thousand Six Hundred Sixty Six Dollars and Sixty Seven Cents ($2,666.67) and

shall represent payment for prejudgment interest.  This non wage income will be reported to Don

on an IRS Form 1099.

iv.     The third check shall be made payable to "The Law Firm of Louis Ginsberg,

P.C." (Tax id 13-3877515), in the gross amount of Two Thousand Six Hundred Sixty Six Dollars

and Sixty Six Cents ($2,666.66) for attorneys' fees and costs.  An IRS Form 1099 will be issued

to Don's counsel and this amount will also be included on Don's IRS Form W-2.

v.      Don's Counsel shall hold all settlement checks in escrow until the Court grants

the Joint Motion for Approval of this Settlement.

3.      <u>Taxes</u>.  Don agrees that he shall protect, indemnify, defend, and hold harmless

Parts Authority from and against any and all liability or claims for any taxes, assessments,

interest, and/or penalties with respect to any payment or payments made to him pursuant to this

Agreement, other than the employer portion of payroll taxes.  Don covenants that he has not

relied upon Parts Authority, or any representative or agent thereof, for advice regarding any tax

liabilities or consequences.

4.      <u>Acknowledgement of Complete and Adequate Consideration</u>.  Don acknowledges

that he has received sufficient consideration as set forth in this Agreement.  He acknowledges

that the release provisions herein shall be given full force and effect in accordance with each and

all of the terms and provisions relating to unknown or unsuspected rights, claims, demands, and causes of action, if any, to the same effect as those terms and provisions relating to any other claims, demands or causes of action herein specified.

      5.      <u>General Release of All Claims</u>.  In consideration for the promises and covenants set forth herein, Don hereby irrevocably and unconditionally releases and forever discharges, for himself and for his heirs, estate, spouse and child or children (if any), attorneys, representatives, executors, administrators, successors, assigns, and agents, Parts Authority, and each of their respective past or present affiliates, parents, subsidiaries, related companies, employees, predecessors, and successors, and each of their respective past and present owners, directors, officers, benefit plans, management committees, members, agents, employees, trustees, representatives, attorneys, shareholders, partners, benefit plan fiduciaries and administrators, and assigns, and all persons acting by, through, under, or in concert with any of them (collectively, the "Parts Authority Releasees"), from any and all actions, complaints, rights, claims, charges, causes of action, liabilities, costs, and damages, known or unknown, asserted or unasserted, suspected or not, fixed or contingent, and in law or in equity, which Don has, or may ever have had, concerning, relating to, predicated upon, or arising out of, directly or indirectly, his employment with Parts Authority and/or separation therefrom.  This Agreement shall not affect Don's rights and claims against Woodbury Automotive Warehouse.

      This Release expressly includes any and all actions, complaints, rights, claims, charges, causes of action, liabilities, costs, and damages based upon any conduct occurring up to and including, or that have accrued as of, the date that Don signs this Agreement (and any obligations or causes of action arising from or predicated upon such claims), including but not limited to any and all claims:

4

- Arising under common law, including wrongful or retaliatory discharge, breach of contract, or based upon a violation of public policy;

- Sounding in tort, including libel, slander, defamation, or intentional infliction of emotional distress;

- Arising under the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act, the Civil Rights Acts of 1866 and 1867, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Employee Retirement Income Security Act, the FLSA, the Americans with Disabilities Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Occupational Safety and Health Act, the Genetic Information Nondiscrimination Act, the Lilly Ledbetter Fair Pay Act of 2009, the Fair Credit Reporting Act, the Family and Medical Leave Act, the Equal Pay Act of 1963, as amended, the Consolidated Omnibus Budget Reconciliation Act, the Rehabilitation Act, the New York State Executive Law, the New York State Human Rights Law, the New York City Administrative Code, The New York City Human Rights Law, the NYLL, the New York Retaliatory Action by Employers Law, the New York State Worker Adjustment and Retraining Notification Act, the New York Nondiscrimination for Legal Actions Law, the New York Wage Theft Prevention Act, the New York City Earned Sick Act, or the New York Civil Rights Law;

- Of discrimination, harassment, retaliation, improper wage payment, or any other unlawful employment practice under federal, state, municipal, local, or foreign law;

- Arising under any federal, state, municipal, local, or foreign law, rule, or regulation that in any way prohibits discrimination, harassment, retaliation, improper wage payments, or any other unlawful employment practice, or that is in any way related to employment and/or the separation therefrom; and

- Arising under any other federal, state, municipal, local, or foreign law, rule, or regulation, including but not limited to civil rights laws, wage-hour, wage-payment, pension, or labor laws, rules, and regulations, constitutions, ordinances, public policy, contract or tort laws, or any other action.

Don expressly acknowledges that this Release is also intended to include in its effect, without limitation, any and all claims which Don does not know of or suspect may exist in his favor at the time of execution of this Agreement, and that this Release will also extinguish any such claim.  The provisions of any laws providing in substance that releases shall not extend to

claims which are unknown or unsuspected, at the time of execution, to the person executing such waiver or release, are hereby expressly waived by Don.

Don also acknowledges and affirms that, following payment of the Settlement Sum in accordance with Section 2 of this Agreement, he has been fully paid all wages and other compensation owed to him by Parts Authority, including all overtime wages, incentive compensation, commissions, and spread of hours pay, and also acknowledges and affirms that, as of the date of his execution of this Agreement, he has been afforded all required periods of family, medical, and other leave, as well as any right to reinstatement upon conclusion of any leave taken.

Don promises and represents that he will withdraw, with prejudice, any and all outstanding administrative complaints or charges, filed with federal, state and local agencies/administrative bodies and will also withdraw with prejudice all judicial actions, as well as any and all lawsuits, claims, demands or actions pending against Parts Authority Releasees both individually and in their/its official capacities.  Don will not file any administrative or judicial complaints, charges, lawsuits, claims, demands or actions of any kind against Parts Authority Releasees.  In the event any such complaints, charges, lawsuits, claims, demands or actions are not withdrawn or are filed due to circumstances beyond the control of Don, he promises and represents that he will not voluntarily testify, give evidence or otherwise participate or cooperate in any investigation or other proceedings connected with or resulting from such complaints, charges, lawsuits, claims, demands or actions and that he will execute such papers or documents as the requesting party determines may be necessary, to have said complaint, charge, lawsuit, claim, demand or action dismissed with prejudice.  Don further agrees to waive the right

6

to recover any monetary damages in any charge or lawsuit filed by him, or by anyone else on his behalf against Parts Authority Releasees, other than pursuant to this Agreement.

Notwithstanding the foregoing, by entering into this Agreement, Don is not releasing claims that relate to any claims for enforcement of this Agreement or claims that arise after the date that Don signs this Agreement.

6.      <u>No Admission of Liability</u>.  This Agreement does not constitute an admission by Parts Authority of any wrongful action or violation of any federal, state statute, or city statute, or common law rights, including those relating to the provisions of any law or statute concerning employment actions, or any other possible or claimed violation of law or rights.

7.      <u>Consultation with Attorney and Knowing and Voluntary Release</u>.  Don acknowledges that he was advised by Parts Authority to consult an attorney of his choosing and, in fact, he has consulted with his attorneys, Louis Ginsberg, Esq. and Matthew Cohen, Esq., before executing this Agreement.  Don further acknowledges that he has been afforded a reasonable period of time, and a full and fair opportunity, to consider this Agreement, to consult with an attorney, and to have an attorney explain all of its contents and ramifications.  Don warrants that he has carefully read this Agreement, that he understands completely its contents, that he understands the significance and consequences of signing it, and that he has agreed to and signed this Agreement knowingly and voluntarily of his own free will, act, and deed, and for full and sufficient consideration.

8.      <u>Confidentiality</u>.  The parties and their counsel represent that they will keep the terms of this Agreement confidential and will not disclose same to any other person or entity, except as provided herein.  The parties and their counsel understand that this Agreement will be presented to the Court for approval and will be public because it will be filed publicly.  Also, the

parties may disclose the terms of this Agreement to members of their immediate family, attorney(s) and financial advisor(s) for tax purposes or financial planning.  Said family member(s), attorney(s) and financial adviser(s) together ("Advisers") shall also be obligated to keep the terms of this Agreement confidential.  In addition, the parties may disclose the existence and terms of this Agreement if necessary in an action to enforce this Agreement, or as otherwise required by law.  If a court of competent jurisdiction determines that either Don and/or any Advisor have materially breached this paragraph 8, Don shall pay Parts Authority $2,500.00 as liquidated damages and not as a penalty.

9.      <u>Non-Disparagement</u>.  Don agrees that he shall not disparage Parts Authority, their officers, shareholders, directors, or employees.  Similarly, Parts Authority, its officers, directors, and shareholders, agree that they shall not disparage Don.

10.      <u>References</u>.  As it relates to Don's procurement from Parts Authority of a professional reference, Parts Authority agrees to provide a neutral reference, under which it will only provide a prospective employer of Don with the following information: Don's dates of employment, salary, and/or rate of pay at the time of separation from employment, and Don's job title(s).

11.      <u>End of Employment/No Reemployment</u>.  Don acknowledges that his employment with Parts Authority has ended.  Don further voluntarily and unequivocally acknowledges and agrees that by entering into this Agreement, he voluntarily and knowingly waives any and all rights to re-employment with Parts Authority, and will not seek employment with Parts Authority at any time.

12.      <u>Severability</u>.   Should any provision of this Agreement be declared illegal or unenforceable by any court, administrative agency, or other entity, the Parties agree that said

8

court, administrative agency, or other entity shall possess full discretion to interpret or modify all such provisions to the minimum extent necessary to be declared enforceable.  If such interpretation or modification is not possible, such provision shall immediately become null and void, leaving the remainder of the Agreement in full force and effect.  Notwithstanding the foregoing, in the event that all material terms and conditions of this Agreement are rendered null and void because such interpretation or modification is not possible, the parties shall be returned to the status quo ante.

13.     Entire Agreement:  The parties affirm that no promise, inducement or agreement not expressed in this Agreement has been made and that this Agreement contains the entire agreement of the Parties.

14.     Modification.  This Agreement may only be modified, altered or changed in writing, signed by the Parties.

15.     Construction.  This Agreement shall not be interpreted in favor of or against either Party on account of such Party having drafted this Agreement.

16.     Consideration Period.  Don understands that he has a period of fourteen (14) calendar days from the date he receives this Agreement to consider its terms and conditions before signing it (the "Consideration Period"), although he is free to sign it before the end of the Consideration Period.  Don further understands that he may use as much of the Consideration Period as he wishes before signing this Agreement, and that any material or immaterial changes to the Agreement will not restart the running of the Consideration Period.

17.     Capacity to Execute.  Don and Parts Authority's agents each represent and warrant that they have the full legal right, capacity, and authority to execute this Agreement and to make the promises, representations and warranties contained herein.  Don further represents

9

and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations, or causes of action referred to in this Agreement.

18.    <u>Bona Fide Dispute</u>.  The Parties agree that there exists a bona fide dispute as to the merit of and basis for the claims asserted by Don.

19.    <u>Governing Law and Jurisdiction</u>.  This Agreement shall be subject to and governed by the laws of the State of New York without giving effect to principles of conflicts of law.

20.    <u>Breach</u>.  If a Court of competent jurisdiction determines that any party breached any of the terms of this Agreement, the breaching party shall pay to the non-breaching party all of its reasonable costs and expenses, including reasonable attorney's fees, incurred in enforcing the terms of this Agreement and/or defending any action(s).  A party may also seek to recover damages arising from any breach of this Agreement by the other party.

21.    <u>Notices</u>.        All other notices and documents set forth herein shall be delivered to counsel for Parts Authority at the following address: Sharon Stiller, Esq., Abrams, Fensterman, Fensterman, Eisman, Formato, & Wolf, LLP, 160 Linden Oaks, Suite E, Rochester, NY 14625.

22.    <u>Section Headings</u>.  The section and paragraph headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

23.    <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument.  Digital signatures shall be deemed as valid as original signatures.

**IN WITNESS WHEREOF**, the undersigned have executed this Settlement Agreement as of the date specified below.

DATED: ___12/26/14___          DATED: _____

_____          _____

CHRISTOPHER DON                PARTS AUTHORITY, INC.

11

**IN WITNESS WHEREOF**, the undersigned have executed this Settlement Agreement as of the date specified below.

DATED: _____          DATED: _____

_____                 _____
CHRISTOPHER DON                          PARTS AUTHORITY, INC.

11